1

2

3                                              O

4

5

6

7

8                 UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11  CITY OF HUNTINGTON PARK; )    Case No. EDCV 14-00419-VAP
    MICON CONSTRUCTION,      )    (DTBx)
12  INC.; MIRACLE PLAYGROUND )
    SALES INC.; MIRACLE      )    **ORDER DENYING MOTION FOR**
13  PLAYGROUND SALES OF      )    **CLASS CERTIFICATION (DOC.**
    SOUTHERN CALIFORNIA LLC; )    **NO. 56)**
14  AND CITY OF MURRIETA,    )
    INDIVIDUALLY AND ON      )    **[Motion filed on April 13,**
15  BEHALF OF ALL OTHERS     )    **2015]**
    SIMILARLY SITUATED,      )
16                           )
                 Plaintiffs, )
17                           )
         v.                  )
18                           )
    LANDSCAPE STRUCTURES;    )
19  PEBBLE FLEX SERVICES     )
    COMPANY; AND DOES 1      )
20  THROUGH 25, INCLUSIVE,   )
                             )
21               Defendants. )
    _____ )
22

23      This purported class action involves a dispute over

24  alleged breach of warranty and unfair competition.

25  Plaintiffs are purchasers and owners, installers, and

26  distributors of playground pad surfaces, PebbleFlex and

27  AquaFlex, manufactured and sold by PebbleFlex Services

28  Company ("PFSC") and Landscape Structures, Inc. ("LSI").

1  Plaintiffs allege that PebbleFlex and AquaFlex do not
2  live up to representations of quality made by PFSC and
3  LSI.  In their Motion for Class Certification ("Motion"
4  or "Mot." (Doc. No. 56)) Plaintiffs move to certify a
5  class of "individuals and entities that have had
6  PebbleFlex or AquaFlex installed in playgrounds, splash
7  pads, or other types of surfaces within the State of
8  California."  For the reasons set forth below, the Court
9  DENIES Plaintiffs' Motion.
10
11                    **I. BACKGROUND**
12  **A.   Factual Background**
13       The PebbleFlex and AquaFlex products are padded
14  surfaces used to reduce injuries on dry and aquatic
15  playgrounds, respectively.  The surfaces consist of
16  millions of small spherical rubber "pebbles" bound by a
17  chemical binder.  (J. Spence Decl. ¶ 5.)  Plantiffs
18  allege that PebbleFlex and AquaFlex are very similar
19  products in terms of manufacture and marketing.  (J.
20  Sepence Decl. ¶ 5; see Exh. A, B to J. Spence Decl.)
21  Defendants claim the products are different.  (Saluti
22  Decl. ¶¶ 7-22, 24-33.)  Between 2009 and 2011 AquaFlex
23  was manufactured using a two-part aliphatic polyurethane
24  binder system, which was substantially better in chlorine
25  resistance than the single component binder formula used
26  by PebbleFlex.  (Id. at ¶ 24.)  The AquaFlex
27  installations were porous and nonporous depending on
28

whether the water play area was indoors or outdoors, whereas the PebbleFlex installations were porous. (<u>Id.</u> at ¶¶ 27-28.) Due to PebbleFlex and AquaFlex's different chemical and physical compositions, each product was installed differently. (<u>Id.</u> at ¶¶ 29, 32-35.)

In 2007, PFSC was formed to manufacture and sell the PebbleFlex and AquaFlex product lines through distributors Miracle Playground Sales ("MPS"). (Saluti Decl. ¶¶ 7-8.) Also included in the supply chain was certified PFSC installer Micon Construction, Inc. ("Micon"). (Zazuetta Decl. ¶¶ 4-10.) In 2011, LSI acquired the PebbleFlex and AquaFlex product lines from PFSC through an asset sale. (Fuller Dep. 11:10-20, Exh. L to Kennedy Decl.; Kraus Decl. ¶ 13.) LSI continued to sell the products under the same name and market the products in much the same way. (<u>See</u> Exhs. E, F to Kennedy Decl.)

In various marketing materials and presentations PebbleFlex and AquaFlex were represented as superior products that would not crack, fade, or degrade for several years because of a unique formula that binds the pebbles together. (Espinosa Decl. ¶¶ 4, 6, 7, and Exhs. A, B to Espinosa Decl.; Holle Decl. ¶ 4; K. Spence Decl. ¶ 4; Exhs. A, B to K. Spence Decl.; Saluti Decl. ¶¶ 3, 12-13.) Some PebbleFlex and AquaFlex installations

experienced problems, such as delamination, cracking, separation, and color fading. (Holle Decl. ¶ 9; Saluti Decl. ¶ 54.) Plaintiffs allege that PebbleFlex and AquaFlex do not live up to their marketed representations (Holle Decl. ¶ 9; K. Spence Decl. ¶ 9; Espinosa Decl. ¶¶ 10-13), while Defendants argue that any problem is the result of improper installation, vandalism, or both, which is not within the scope of the PebbleFlex and AquaFlex warranties. (Saluti Decl. ¶¶ 37-47; Vogt Decl. ¶¶ 18-48.)

Between 2009 and 2011, proposed class representatives, City of Huntington Park and City of Murrieta, both used PebbleFlex installations at parks in their respective cities. (Espinosa Decl. ¶ 8-9; Kast Decl. ¶ 9.) Neither used AquaFlex. (Espinosa Depo. 35:11-14; Kast Depo. 57:7-9.) MPS distributed, and Micon installed, PebbleFlex in the Salt Lake Park projet and Torrey Pines Park project for the City of Huntington Park and City of Murrieta, respectively. (Espinosa Decl. ¶ 3, 8; Kast Decl. ¶ 8.)

Both cities contend that they chose PebbleFlex over other less expensive products because of written representations of quality made by PFSC marketing materials (Espinosa Decl. ¶ 5; Kast ¶ 6.) and oral representations made by MPS sales representatives. (K.

Spence Decl. ¶ 6; J. Spence Decl. ¶ 10; Espinosa Decl. ¶ 4-5). Both cities also allege that cracks, crevices and eventually holes appeared along with delamination and discoloration. (Espinosa Decl. ¶¶ 10-11; Kolek Decl. ¶ 3.) Initially, MPS, Micon, and PFSC inspected and made repairs (Espinosa Decl. ¶ 12); however, by July 2013, Micon informed the City of Huntington Park that it believed there was a problem with the PebbleFlex product itself and it would no longer repair product related failures at the Salt Lake Park. (Id. at ¶ 13.) Bids to remove the PebbleFlex installations and replace them with other products are pending in both the City of Huntington Park and City of Murrieta. (Espinosa Decl. ¶¶ 14-15; Kolek Decl. ¶ 4.)

**B. Legal Background**

In January 2014, Defendants removed this purported class action lawsuit, which sought to certify three subclasses: (a) PebbleFlex or AquaFlex purchasers and owners, (b) PebbleFlex or AquaFlex installers, and (c) others in the supply chain who have incurred obligations to purchasers. (Second Amended Complaint ("SAC") (Doc. No. 32) ¶ 10.) Proposed class representatives allege causes of action for California Business & Professions Code § 17200 (unfair competition) and breach of warranty, while each plaintiff individually alleges fraud.

1    In this Motion filed on April 15, 2015, Plaintiffs
2 are only seeking to certify purchasers of PebbleFlex or
3 AquaFlex (subclass "a") because there are not enough
4 members of subclasses "b" or "c" to meet the numerosity
5 requirement of Rule 23(a)(1).  (Mot. at 1.)  Thus,
6 Plaintiffs seek to certify a class of "individuals and
7 entities that have had PebbleFlex or AquaFlex installed
8 in playgrounds, splash pads, or other types of surfaces
9 within the State of California."  (Id.)

10

11    On May 4, 2015 Defendants PFSC and LSI filed
12 oppositions to the Motion ("PFSC Opp.") and ("LSI Opp."),
13 respectively.  On May 18, 2015, the Plaintiffs filed a
14 reply ("Reply").

15

16                    **II. LEGAL STANDARD**
17    Recognizing that "[t]he class action is an exception
18 to the usual rule that litigation is conducted by and on
19 behalf of the individual named parties only," Federal
20 Rule of Civil Procedure 23 demands that two requirements
21 be met before a court certifies a class.  Comcast Corp.
22 v. Behrend, 133 S.Ct. 1426, 1432 (2013).

23

24    A party must first meet the requirements of Rule
25 23(a), which demands that the party "prove that there are
26 in fact sufficiently numerous parties, common questions
27 of law or fact, typicality of claims or defenses, and
28

adequacy of representation." <u>Behrend</u>, 133 S.Ct. at 1432. Although not mentioned in Rule 23(a), the moving party must also demonstrate that the class is ascertainable. <u>Keegan v. Am. Honda Motor Co., Inc.</u>, 284 F.R.D. 504, 521 (C.D. Cal. 2012); <u>Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.</u>, 209 F.R.D. 159, 163 (C.D. Cal. 2002) ("Prior to class certification, plaintiffs must first define an ascertainable and identifiable class.").

If a party meets Rule 23(a)'s requirements, the proposed class must also satisfy at least one of the requirements of Rule 23(b). Here, Plaintiffs invoke Rule 23(b)(3) (Mot. at 19), which demands that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry inherent in a Rule 23(b)(3) analysis asks "whether proposed classes are sufficiently cohesive to warrant adjudication by representation," focusing on "the relationship between common and individual issues." <u>In re Wells Fargo Home Mortg. Overtime Pay Litig.</u>, 571 F.3d 953, 957 (9th Cir. 2009) (further noting that the express purpose of Rule 23(b)(3) is to "achieve economies of time, effort, and expense and promote [ ] uniformity of decision as to persons similarly situated.").

1    District Courts are given broad discretion to grant
2    or deny a motion for class certification.  Bateman v.
3    American Multi-Cinema, Inc., 623 F.3d 708, 712 (9th Cir.
4    2010).  The party seeking class certification bears the
5    burden of showing affirmative compliance with Rule 23.
6    See Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551
7    (2011).  This requires a district court to conduct a
8    "rigorous analysis" that frequently "will entail some
9    overlap with the merits of the plaintiff's underlying
10   claim."  Id.  Though, the merits can be considered only
11   to the extent they are "relevant to determining whether
12   the Rule 23 prerequisites to class certification are
13   satisfied."  Amgen Inc. v. Conn. Ret. Plans & Trust
14   Funds, 133 S.Ct. 1184, 1195 (2013).

15

16                      **III. DISCUSSION**

17   Plaintiffs seek to certify a class of "individuals
18   and entities that have had PebbleFlex or AquaFlex
19   installed in playgrounds, splash pads, or other types of
20   surfaces within the State of California."  (Mot. at 1.)
21   Class certification requires the Court to engage in a
22   two-step analysis.  First, it must determine whether the
23   four requirements of Rule 23(a) have been established:
24   (1) numerosity, (2) common questions of law or fact, (3)
25   typicality, and (4) adequate representation.  See, e.g.,
26   Ellis v. Costco Wholesale Corp., 657 F.3d 970, 974 (9th
27   Cir. 2011).  Second, Plaintiffs must satisfy at least one
28

1  of Rule 23(b)'s provisions.   See Stearns v. Ticketmaster
2  Corp., 655 F.3d 1013, 1019 (9th Cir. 2011).   When a party
3  invokes Rule 23(b)(3), as Plaintiffs do here, the Court
4  must decide whether "the actual interests of the parties
5  can be served best by settling their differences in a
6  single action." Hanlon v. Chrysler Corp., 150 F.3d 1011,
7  1022 (9th Cir. 1998).   "When common questions present a
8  significant aspect of the case and they can be resolved
9  for all members of the class in a single adjudication," a
10  court may certify a class pursuant to Rule 23(b)(3).   Id.
11
12  **A.   Rule 23(a)**
13      "A class definition should be precise, objective and
14  presently ascertainable," such that it is
15  "administratively feasible to determine whether a
16  particular person is a class member." Allen v. Hyland's
17  Inc., 300 F.R.D. 643, 658 (C.D. Cal. 2014).
18
19      Here, the definition of the proposed class being
20  considered for certification is as follows:
21      Individuals and entities that have purchased
22      PebbleFlex or AquaFlex and incurred the costs of
23      their installation, where the PebbleFlex or
24      AquaFlex has failed to meet the representations
25      of quality, safety and/or longevity made by the
26      defendants or where the PebbleFlex or AquaFlex
27      has failed to meet the express warranty of
28

1    quality, safety and/or longevity made by the

2    defendants.

3  (Motion at 8.)

4

5       The group of individuals and entities that have

6  purchased either PebbleFlex or AquaFlex, and incurred

7  costs because the products allegedly do not meet certain

8  articulated representations, is definite and can be

9  identified.  It is administratively feasible for the

10 Court to determine whether a particular individual or

11 entity is a member of the class based on the above class

12 definition.  Evidence such as sales materials, purchase

13 contracts, and repair orders could be used to identify

14 class membership.  Moreover, Defendants do not argue that

15 the proposed class is unascertainable.

16

17      Accordingly, the Court finds that the members of the

18 proposed class are ascertainable.

19

20    **1.  Numerosity**

21      Under Rule 23(a)(1), a class must be "so numerous

22 that joinder of all members is impracticable."  Courts

23 have repeatedly held that classes comprised of "more than

24 forty" members presumptively satisfy the numerosity

25 requirement.  <u>See, e.g.</u>, <u>DuFour v. BE LLC</u>, 291 F.R.D.

26 413, 417 (N.D. Cal. 2013).

27

28

Plaintiffs' Motion cites <u>Delarosa v. Boiron</u>, Inc., 275 F.R.D. 582, 587 (C.D. Cal. 2011), which states "[a]s a general rule, classes of forty or more are considered sufficiently numerous."  At the motion hearing, however, Plaintiff argued that a class of twenty was sufficiently numerous, citing an unpublished opinion, <u>Rannis v. Recchia</u>, 380 F. App'x 646 (9th Cir. 2010).  <u>Rannis</u> held that a district court "did not abuse its discretion in determining that the class of 20 satisfies the numerosity requirement."  <u>Rannis</u>, 380 F. App'x at  650.

At the motion hearing, Plaintiffs' counsel suggested that <u>Rannis</u> stood for the general proposition that a class of twenty was sufficient for class certification. A closer reading of <u>Rannis</u> reveals the court's holding was more concerned with the discretion of the district court to deny class decertification than with the numerosity calculation at the class certification stage. <u>Rannis</u>, 380 F. App'x at 651 ("District courts have broad leeway in making certification decisions. Recchia has not persuaded us that the district court's decision was a clear abuse of discretion.").

At the class certification stage, the <u>Rannis</u> court certified a class of 74 potential members.  <u>Rannis</u>, 380 F. App'x at 648.  It was not until after the opt-out notices were distributed that the class was reduced to

11

1   twenty members.  The district court in <u>Rannis</u> denied the

2   defendant's decertification motion and the court of

3   appeals held that denial of the motion was not an abuse

4   of discretion.  <u>Rannis</u>, 380 F. App'x at 649. Not

5   withstanding <u>Rannis</u>' lack of precedential value, the

6   facts and circumstances in <u>Rannis</u> are very different than

7   the facts and circumstance before this Court.  Most

8   importantly, and as acknowledged in <u>Rannis</u>, district

9   courts have broad leeway in making certification

10  decisions.

11

12      Aggregating PebbleFlex and AquaFlex installation

13  projects in California, Plaintiffs argue that there are

14  approximately ninety class members.  (Mot. at 15.)  The

15  evidence to support this calculation is based on the

16  declaration of Audrey Kennedy, a legal assistant to

17  Plaintiffs' counsel.  Kennedy arrived at the calculation,

18  using documents obtained during discovery, by combining

19  the number of PebbleFlex and AquaFlex installation

20  projects in California made by either PFSC or LSI.

21  (Kennedy Decl. ¶¶ 9-13; Exhs. G, H, I to Kennedy Decl.)

22

23      Defendants object to this calculation for three

24  reasons.  First, Defendants contend that Kennedy's

25  statements are inadmissible because they lack personal

26  knowledge, lack foundation, and are hearsay.  (PFSC Opp.

27  at 11; LSI Opp. at 20.)  Second, Defendants argue that

28

1   Plaintiffs cannot combine PFSC and LSI installation
2   projects when calculating numerosity because owners of
3   projects contracted through LSI would have no standing to
4   purse claims against PFSC and vice versa.  (Id.)  LSI is
5   effectively disclaiming liability for PebbleFlex and
6   AquaFlex installations sold by PFSC.  Third, Defendants
7   argue that even if Kennedy's statements were admissible,
8   the total number of installation projects in California
9   is not evidence of class size because each project does
10  not represent a different class member.  (Id.)

11

12      The Court does not find Defendants' evidentiary
13  objections persuasive because, as discussed in Part
14  III.D. infra, the evidentiary standards at the class
15  certification stage are relaxed.  The Court does find
16  Defendants' second objection persuasive.  In an asset
17  sale, a buyer is not generally liable for the obligations
18  of the selling corporation when the sale of assets is
19  completed in good faith, for adequate consideration, and
20  the selling corporation is left with sufficient assets to
21  meet its obligations; nevertheless, there are several
22  exceptions to this rule.  See Pierce v. Riverside Mortg.
23  Sec. Co., 25 Cal. App. 2d 248 (1938).

24

25

26

27

28

To determine if Plaintiffs can aggregate LSI and PFSC installations to satisfy numerosity, the Court must consider whether LSI is liable for the PebbleFlex and AquaFlex products manufactured and sold by PFSC.  This inquiry will necessarily involve considering the merits of the case.  The Supreme Court has acknowledged that such an inquiry is appropriate, and sometimes necessary, to the extent that it is done to determine whether the Rule 23 prerequisites to class certification are satisfied.  <u>See</u> <u>Dukes</u>, 131 S.Ct. at 2551.  Here, an inquiry into LSI's liability, which implicates the merits, is necessary to determine whether Rule 23(a)'s numerosity requirement is met because Plaintiffs are not able to satisfy numerosity through PFSC or LSI installations when considered separately.

Under the "*de facto* merger doctrine," a corporation cannot escape liability by selling or transferring all of its assets to another corporation when the transaction amounts to a consolidation or merger of the two corporations.  <u>See</u> <u>McClellan v. Northridge Park Townhome Owners Ass'n, Inc.</u>, 89 Cal. App. 4th 746, 753 (2001).

Here, LSI acquired PFSC's PebbleFlex and AquaFlex product lines in an asset sale in 2011.  Following the *de facto* merger doctrine, Plaintiffs must show that PFSC sold all of its assets, not just the PebbleFlex and

AquaFlex product lines to LSI, amounting to the
consolidation of the two corporations.  Plaintiffs have
failed to meet this burden.  The details of this
transaction have not been submitted as evidence to show
that the sale of the PebbleFlex and AquaFlex product
lines from PFSC to LSI amounted to the "consolidation or
merger of the two corporations."

     At the motion hearing on June 8, 2015, Plaintiffs
acknowledged that the PFSC-LSI asset purchase agreement
was provided to Plaintiffs by Defendants.  Plaintiffs'
counsel admitted he did not inquire further into the
nature of the agreement because he thought it went to the
merits of the case, which he believed were outside the
scope of class certification.  This belief is erroneous
because, as noted above, a district court may consider
the merits of a case at the class certification stage so
long as it relates to one of Rule 23's requirements.
Here, the asset purchase agreement relates to the
numerosity requirement.  Without evidence as to the
nature of the asset purchase agreement, the Court cannot
apply the *de facto* merger doctrine to the general rule
that a buyer is not liable for the obligations of a
selling corporation.

The "product line exception," as articulated by the California Supreme Court in <u>Ray v. Alad Corp.</u>, 19 Cal. 3d 22 (1977), takes a different approach in holding a successor corporation liable in products-liability cases. In <u>Ray</u>, the Court found successor liability when a buyer corporation acquired effectively all of a seller's assets and continued to manufacture the same product line under the same name and generally continued the seller's business as before. <u>Id.</u> at 31. The court reasoned that the responsibility of the successor to assume the risk for the previously manufactured product was the price which the buyer had paid for the seller's goodwill and the buyer's ability to enjoy the benefits of that goodwill. <u>Id.</u> at 34.

Here, rather than rebranding the products, LSI continued to market and sell PebbleFlex and AquaFlex under the same trade names, including the twenty-six LSI project installations Kennedy used in her numerosity calculation. The Court declines to extend the reasoning in <u>Ray</u> to a breach of warranty context. Unlike the plaintiffs in <u>Ray</u>, here, Plaintiffs have a remedy against the original manufacturer, PFSC. Thus, Plaintiffs' remedies were not destroyed by LSI's acquisition of the PebbleFlex and AquaFlex product lines. Courts have held that a buyer is not liable under the product line exception when the selling corporation continued to exist

after the acquisition.  <u>See</u> <u>Chaknova v. Wilber-Ellis Co.</u>,
69 Cal. App. 4th 962 (1999).  Here, as with the cases
cited above, the essential element of causation is
missing, since the successor's purchase did not cause
either the predecessor's dissolution or the destruction
of Plaintiffs' remedy.

Accordingly, the Court does not find LSI liable for
PFSC's obligations under either the *de facto* merger
doctrine or product line exception.

Defendants' third objection is persuasive.
Plaintiffs define the proposed class as the purchasers
and owners of installations (Mot. at 1); however,
Plaintiffs cite the number of installation projects as
evidence that the numerosity requirement is met.  (Mot.
at 15 citing Kennedy Decl. ¶¶ 9-13.)  Although it is true
that "[i]n determining whether numerosity is satisfied, a
court may consider reasonable inferences drawn from the
facts before it," <u>Balasanyan v. Nordstrom, Inc.</u>, 294
F.R.D. 550, 558 (S.D. Cal. 2013); <u>see</u> <u>Gay v. Waiters' &</u>
<u>Dairy Lunchmen's Union</u>, 549 F.2d 1330, 1332 (9th Cir.
1977), the Court is now asked to make a reasonable
inference about the size of the proposed class of
installation *owners* from the number of installation
*projects.*

Defendants argue the maximum potential class size of project owners with projects that incorporated PebbleFlex, AquaFlex, or both, sold by PFSC is no more than thirty-five. (PFSC Opp. at 11.) Further, they contend that at least nine of the thirty-five project owners only incorporated AquaFlex into their projects (Saluti Decl. ¶ 56-58; Exh. A to Saluti Decl.), and only twenty-three of the project owners incorporated PebbleFlex into their projects. ( Saluti Decl. ¶ 59.)

Plaintiffs argue in their Reply that "[t]he defense provides no admissible evidence that the multiple installations in various municipalities are owned by a single entity." (Reply at 12). This suggests that Defendants bear the burden of showing that numerosity is not met, rather than Plaintiffs bearing the burden of showing that numerosity is met. This suggestion is misguided as Plaintiffs bear the burden of establishing the four requirements of Rule 23(a). See Mantolete v. Bolger, 767 F.2d 1416, 1424 (9th Cir. 1985).

Plaintiffs have not offered sufficient evidence that the numerosity requirement is met, and the Court cannot make a reasonable inference in this regard. Accordingly, Plaintiffs have failed to establish the numerosity requirement of Rule 23(a).

### 2.   Commonality

Commonality requires Plaintiffs to demonstrate there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Plaintiffs must demonstrate "significant proof" that members of the class have suffered the same injury, and not merely that they have suffered violations of the same provision of law.  <u>Wal-Mart</u>, 131 S.Ct. at 2551.  Plaintiffs' claims must depend on a "common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  <u>Id.</u>

"Plaintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution.  So long as there is 'even a single common question' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)."  <u>Wang v. Chinese Daily News, Inc.</u>, 737 F.3d 538, 544 (9th Cir. 2013) (quoting <u>Wal-Mart</u>, 131 S.Ct. at 2556.)  Thus, commonality exists even "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the

class." <u>Evon v. Law Offices of Sidney Mickell</u>, 688 F.3d
1015, 1029 (9th Cir. 2012) (quoting <u>Parra v. Bashas',</u>
<u>Inc.</u>, 536 F.3d 975, 978-79 (9th Cir. 2008)).

Plaintiffs proffer four possible common questions
capable of classwide resolution: (1) whether the design
of PebbleFlex and AquaFlex is defective; (2) whether
identical representations and warranties disseminated to
the class were false; (3) whether LSI is liable for the
conduct of PFSC as its successor; and (4) the measure of
damages.  (Mot. at 16.)  Defendants offer a number of
objections.  (PFSC Opp. at 12-14.)

First, Defendants argue that the questions of law or
fact between proposed class members who own projects with
PebbleFlex and proposed class members who own projects
with AquaFlex are not common because the two products are
manufactured, installed, and marketed differently. (PFSC
Opp. at 13.)  As a result of these differences,
Defendants argue, the resolution of factual and legal
questions concerning representations and advertising
related to PebbleFlex will not resolve the same questions
concerning representations and advertising related to
AquaFlex.  (<u>Id.</u>)  Plaintiffs' Reply argues that
PebbleFlex and AquaFlex are "virtually the same product"
marketed, sold, and installed in the same way.  (Reply at
9.)

The Court finds that proposed class members lack commonality with respect to whether the design of PebbleFlex and AquaFlex is defective because the products are manufactured and installed differently.  (Saluti Decl. ¶¶ 11-22, ¶¶ 24-34.)  The differences in product manufacturing would make it difficult to resolve, in "one stroke," the question of whether the products are defective.  Defendants offer the declaration of Gerald Saluti, a Ph.D. in Organic Chemistry, to describe how PebbleFlex and AquaFlex are manufactured and installed differently.  (Saluti Decl. ¶¶ 2, 24-34.)  Plaintiffs have not offered sufficient evidence that an inquiry into the method of PebbleFlex and AquaFlex manufacturing would yield common issues of fact.  Plaintiffs carry the burden of showing commonality with respect to the design question, and have failed to carry this burden.

Second, with respect to whether identical representations and warranties disseminated to the class were false, the Court finds there exists common questions of law or fact because PebbleFlex and AquaFlex were marketed in very similar ways by both PFSC and LSI.  The PebbleFlex and AquaFlex sales brochures distributed by both PFSC and LSI make very similar representations with regards to durability, safety, and aesthetic longevity.  Moreover, both products failed.  (See Exhs. A. B to J. Spence Decl.; Exhs. E, F to Kennedy Decl.)  The Court can

make a reasonable inference based on the representations made in the sales brochures, and the evidence of product failure that there exists common questions of law or fact as to the truth or falsity of the representations.

Third, Defendants argue that public entity class members lack commonality with private project owners because public project owners rely on advertising differently than private project owners. (PFSC Opp. at 13.)  While it is true that California cities, unlike private owners, are prohibited from requiring specific brand or trade name materials or products in project bid specifications (See California Public Contract Code § 3400(b)), this does not mean that product representations are not considered by public entities when creating such specifications.  Plaintiffs do not need to show that public and private entities used or relied on PebbleFlex or AquaFlex representations in identical ways because, as noted above, commonality exists even "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class."  Evon, 688 F.3d at 1029.

Fourth, Defendants argue that acts of vandalism differ on each project and directly relate to Plaintiffs' claims.  (PFSC Opp. at 14.)  The Court finds that even if individual acts of vandalism differ between projects,

there still exists the overall common question as to whether failures such as cracks, crevices, and holes were a result of the quality of the product itself or acts of vandalism as a whole.

Fifth, Defendants argue that proposed class member damages lack commonality because each project restitution and repair claim would need to be calculated on a project-by-project basis; however, damage calculations alone cannot defeat class certification. Yokoyama v. Midland Nat. Life Ins. Co., 594 F.3d 1087, 1094 (9th Cir. 2010) ("We have said that '[t]he amount of damages is invariably an individual question and does not defeat class action treatment.'").

Not all of Plaintiffs' proposed common questions are appropriate for classwide resolution; however, not every question in the case need be capable of classwide resolution so long as there is "even a single common question" of commonality. Wang, 737 F.3d at 544. Accordingly, the Court finds that the second, third, and fourth proposed questions are sufficiently common to the class.

### 3.   Typicality

Class representatives must have claims that are "typical of the claims" of the other members of the class, in order to ensure that "the named plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Gen. Tel. Co. Sw. v. Falcon, 457 U.S. 147, 158 n.13 (1982) (citing Rule 23(a)(3)).  The standard for determining typicality is a permissive one, and asks only whether the claims of the class representatives are "reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

Defendants argue that unique defenses exist to the proposed class representatives' claims; however, the defenses raised are not so unique as to make the claims of proposed class representatives not typical.  First, PebbleFlex and AquaFlex marketing materials contained representations regarding installations.  Therefore, that different installers may have installed the products improperly is not a unique defense.  Second, Defendants' claim that proposed class representatives' installations experienced high levels of vandalism is not a unique defense because vandalism of any kind is not covered by the product warranties.

1    Defendants also argue that the proposed class
2 representatives do not own AquaFlex installations, thus
3 rendering their claims not typical of the class as a
4 whole.  PebbleFlex and AquaFlex were manufactured
5 differently.  This makes a determination about
6 defectiveness for each product different.  Since the
7 proposed class representatives do not include AquaFlex
8 installation owners, their claims are different, and not
9 typical, of the whole class, which includes AquaFlex
10 installation owners.  As noted above, Plaintiffs have not
11 offered sufficient evidence to show that PebbleFlex and
12 AquaFlex are similar enough to makes claims by PebbelFlex
13 owners typical of AquaFlex owners.

14

15    Accordingly, the proposed class representatives set
16 forth claims that are not typical of the other members of
17 the class.

18

19         **4.   Adequacy of Representation**
20    The fourth Rule 23(a) requirement is that Plaintiffs
21 "fairly and adequately protect the interests of the
22 class."  Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry
23 requires the Court to make two determinations: (1)
24 whether the named plaintiffs and class counsel have any
25 conflicts of interest with other class members; and (2)
26 whether counsel and the class representatives will
27 "vigorously prosecute the action on behalf of the class."
28

1    <u>Ries v. Arizona Beverages USA LLC</u>, 287 F.R.D. 523, 540

2    (N.D. Cal. 2012) (citing <u>Ellis v. Costco Wholesale Corp.</u>,

3    657 F.3d 970, 985 (9th Cir. 2011)).

4

5         Defendants argue that the proposed class

6    representatives are not adequate representatives for the

7    class because (1) a conflict exists between all class

8    members, on the one hand, and MPS and Micon on the other

9    hand; and (2) a separate conflict exists between the

10   proposed class representatives, and MPS and Micon.

11   Neither of these alleged conflicts bar class

12   certification because they are not conflicts between

13   proposed class members.  Defendants have not provided any

14   authority, binding or otherwise that would require the

15   Court to deny class certification because of conflicts

16   between the proposed class as a whole and other non-class

17   member plaintiffs.  Though a conflict does not exist

18   between class members or proposed class representatives,

19   the Court finds that the proposed class representatives

20   do not have the same incentives as other class members to

21   prosecute vigorously all the claims in the case because

22   the class representatives are not typical of the entire

23   class.  Hence, the proposed class representatives are not

24   adequate representatives.

25

26

27

28

The Court finds that Plaintiffs have sufficiently established commonality, but have not established numerosity, typicality or adequate representation. Accordingly, Plaintiffs have not established the requirements of Rule 23(a).

**C.  Rule 23(b)**

When invoking Rule 23(b)(3), the party seeking class certification bears the burden of showing that the following two criteria are met: (1) the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  See In re Wells Fargo, 571 F.3d at 957.

**1.  Predominance**

Defendants re-state their reasons against finding commonality and typicality of the proposed class representatives when they argue that common issues of law or fact do not predominate over individual issues.  By definition every member of the proposed class either purchased a PebbleFlex installation, AquaFlex installation, or both.  Though both the breach of warranty and unfair competition causes of action involve overlapping sets of facts, namely similar written representations regarding the quality of PebbleFlex and

1  AquaFlex, there were also oral representations made by
2  MPS sales representatives.   An inquiry into the nature of
3  these oral representations will differ from deal to deal,
4  sales representative to sales representative, and product
5  to product.   This sort of individualized inquiry weighs
6  against predominance.   There may also be limited
7  individualized inquiries as to the level of vandalism and
8  damages to a particular owner.
9
10     Reasonable inferences can be made based on the
11  evidence cited that written representations, in the form
12  of marketing brochures, were similar for both PebbleFlex
13  and AquaFlex.   However, there are a number of individual
14  issues of fact, such as whether the different methods of
15  manufacture led to product failure or whether the oral
16  representations were consistent across class members,
17  which weighs against predominance.   Accordingly, the
18  Court finds that common issues narrowly predominate.
19
20     **2. Superiority**
21     In addition to the predominance requirement of Rule
22  23(b)(3), a court must also find "that a class action is
23  superior to other available methods for fairly and
24  efficiently adjudicating the controversy."   Fed. R. Civ.
25  P. 23(b)(3).
26
27
28

1    Defendants argue that individual lawsuits would be
2    superior because it would give proposed class members the
3    opportunity to argue individualized damages.  As noted
4    above, the amount of damages is usually an individual
5    question, but that alone does not defeat class action
6    treatment.

7

8    Plaintiffs argue a single class action lawsuit is
9    superior to multiple individual lawsuits because some of
10   the evidence needed to prove the breach of warranty and
11   unfair competition causes of action would be very similar
12   across class members; however, in this case, there are a
13   number of issues specific to individual purchasers.
14   Since the Court found that Plaintiffs cannot meet
15   numerosity, multiple suits would not be an inefficient
16   method for adjudicating the controversy.  Class action
17   litigation is not superior to multiple individual
18   lawsuits.  Accordingly, Plaintiffs have not established
19   the requirements of Rule 23(b).

20

21   **D.   Evidentiary Objections**

22   The Ninth Circuit has not directly addressed the
23   evidentiary standard at the class certification stage;
24   however, other "courts have held that on a motion for
25   class certification, the evidentiary rules are not
26   strictly applied and courts can consider evidence that
27   may not be admissible at trial."  <u>Parkinson v. Hyundai</u>

28

Motor Am., 258 F.R.D. 580, 599 (C.D. Cal. 2008) (quoting
Rockey v. Courtesy Motors, Inc., 199 F.R.D. 578, 582
(W.D. Mich. 2001)); see, e.g., Syed v. M-I, L.L.C., 2014
WL 6685966, at *6 (E.D. Cal. Nov. 26, 2014); see also
Davis v. Social Service Coordinators, Inc., 2012 WL
3744657, *7 (E.D. Cal. Aug. 28, 2012) ("Many courts have
relaxed the evidentiary requirements for plaintiffs at
the conditional certification stage because the evidence
has not been fully developed through discovery and the
evidence will be subjected to greater scrutiny at the
second stage"); see also Dominguez v. Schwarzenegger, 270
F.R.D. 477, 483 n. 5 (N.D. Cal. 2010) ("[U]nlike evidence
presented at a summary judgment stage, evidence presented
in support of class certification need not be admissible
at trial.").

Defendant PFSC filed along with its Opposition a
supplemental objection ("Supp. Obj." (Doc. No. 58)) to
Plaintiffs' supporting declarations as admissible
evidence.  While many of PFSC's objections would be
sustained at trial, PFSC provides no authority, binding
or otherwise, to support its argument that such evidence
is inadmissible during the class certification stage.  On
the contrary, the Court finds persuasive authority
holding that at the class certification stage evidentiary
requirements should be relaxed.  Accordingly, the

1  evidence found in declarations provided by both
2  Plaintiffs and Defendants is admissible with respect to
3  determining class certification.

4

5                        **IV. CONCLUSION**

6

7       While Plaintiffs are able to show that there exists
8  some common questions of law or fact, they are unable to
9  show numerosity, typicality and adequacy of
10 representation.  Hence, Rule 23(a) is not met. Rule 23(b)
11 is similarly not met because while common issues narrowly
12 predominate, the Plaintiffs are unable to show that class
13 action litigation is superior to individual law suits.
14 For the foregoing reasons, the Court DENIES certification
15 of the following class: "individuals and entities that
16 have had PebbleFlex or AquaFlex installed in playgrounds,
17 splash pads, or other types of surfaces within the State
18 of California."

19

20

21

22

23 Dated: June 27, 2015                     _____
24                                          VIRGINIA A. PHILLIPS
                                            United States District Judge
25

26

27

28

                                31